**UNITED STATES DISTRICT COURT**
District of New Jersey

| | |
|---|---|
| CHAMBERS OF<br>JOSE L. LINARES<br>JUDGE | MARTIN LUTHER KING JR.<br>FEDERAL BUILDING & U.S. COURTHOUSE<br>50 WALNUT ST., ROOM 5054<br>P.O. Box 999<br>Newark, NJ 07101-0999<br>973-645-6042 |

NOT FOR PUBLICATION

## LETTER-OPINION AND ORDER

March 30, 2006

Richard Crossin
Altamaura & Crossin
4000 Bergenline Avenue
Union City, NJ 07087

John C. Caulfield
Hope R. Black Corporation Counsel
City Hall -280 Grove Street
Jersey City, NJ 07302

     Re:    <u>Vasquez, et al. v. City of Jersey City, et al.</u>
               Civil Action No.: 03-cv-5369 (JLL)

Dear Counsel:

This matter comes before the Court on the motion for summary judgment[1] by Defendants City of Jersey City ("Jersey City"), Officer John Wisniewski ("Officer Wisniewski"), and Officer Samuel Santana ("Officer Santana") (collectively "Defendants") pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiffs[2] Kilvio Vasquez, Ruffina Vasquez, and Jose

---

[1] The Court notes that Defendants move for summary judgment on all counts of the complaint. However, Defendants only brief Plaintiffs' claims of false arrest, excessive force, and municipal liability, even though the complaint also states claims for violations of Kilvio Vasquez's 6th and 14th Amendment rights. Since these claims are not addressed in Defendants' brief, the Court will treat Defendants' motion as one for partial summary judgment.

[2] Ruffina and Jose Vasquez allege that they are the legal guardians of Kilvio Vasquez, and, as such, are bringing this claim with him on his behalf. For the sake of simplicity, when the

1

Vasquez (collectively "Plaintiffs") filed suit pursuant to 42 U.S.C. § 1983, alleging that Defendants violated Kilvio Vasquez's constitutional rights and seeking compensatory damages, punitive damages and attorneys' fees. This Court has considered the submissions in support of and in opposition to this motion. This motion is resolved without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## FACTUAL AND PROCEDURAL BACKGROUND

This action stems from the arrest of Plaintiff on November 14, 2001 for wandering to commit a CDS offense in violation of N.J. Stat. § 2C:33-2.1, resisting arrest in violation of N.J. Stat. § 2C:29-2, and assaulting a police officer in violation of N.J. Stat. § 2C:12-1(b)(5)(a).

Plaintiff is severely retarded due to a premature skull closure that was discovered at six months of age. Plaintiff was born in the Dominican Republic and arrived in the United States in June of 2001. Shortly after his arrival in this country and several months before the incident in question, the Jersey City Public Schools estimated Plaintiffs IQ below 45. This evaluation noted that Plaintiff's IQ placed him in the "Severely Deficient range." (Kilvio Vasquez's Individualized Education Program, Decl. of John C. Caulfield, Ex. J.) Because of his low level of functioning, Plaintiff requires assistance with basic daily tasks such as bathing and dressing and requires ongoing supervision. Although he can speak some English, his English is limited; he cannot read or write.

On November 14, 2001, the day of the incident in question, November 14, 2001, Plaintiff was 15 years old, approximately five feet eleven inches and weighed approximately 160 pounds.

---

Court refers to "Plaintiff" in this Opinion, the term refers to Kilvio Vasquez.

He was riding his bicycle without supervision in his neighborhood, which Defendants allege is reported to be a high drug area. Officers Wisniewski and Santana were in the neighborhood, in plain clothes, in an unmarked police car working as part of a Narcotics Division perimeter unit. Prior to their interaction with and arrest of Plaintiff, Officers Wisniewski and Santana had arrested Tracy Hall ("Hall") for loitering to commit a CDS offense and had placed her in the back seat of the police vehicle. Both officers and Hall state that Plaintiff rode his bicycle past the police vehicle and said to the officers, "what do you want." Specifically, Hall stated in her witness statement given on the day of the incident that "this guy comes riding down the block on a bike and comes up to the car and said 'what do you want.' Then I started laughing because I can't believe that he did not know that they were cops. . . . He was asking the cops if they wanted to buy drugs." (Police Witness Statement, Decl. of John C. Caulfield, Ex. H.) She also stated that she did not see anyone else in the area at the time the comment was made to the police. Both officers have stated that they interpreted Plaintiff's comment as asking the officers what drugs they wanted to purchase.

After passing Plaintiff, the officers made a u-turn to investigate further. They observed Plaintiff sitting on his bike and leaning against a fence. At this point Officer Wisniewski exited the vehicle and approached Plaintiff. Officer Wisniewski and Plaintiff testified that Officer Wisniewski identified himself as a police officer.[3] The incident report, Officer Wisniewski's

---

[3] Based on testimony from Kilvio Vasquez's mother, Plaintiffs' opposition brief simply states that Kilvio Vasquez is mentally retarded. Plaintiffs brief does not specify the level of Plaintiff's disability nor do Plaintiffs argue that, based on his level of disability, Plaintiff's deposition testimony is unreliable. However, this Court notes that Plaintiff's Individual Education Plan, submitted to this Court as Defendants' Exhibit J to John Caulfield's Declaration, indicates that Plaintiff's IQ is below 45. Therefore, while this Court does not ignore Plaintiff's deposition testimony, it also does not treat his testimony as dispositive of any factual disputes.

testimony, and Plaintiff's testimony all indicate that, as Officer Wisniewski approached Plaintiff, Plaintiff swung at him and attempted to flee. In Hall's witness statement she stated that "one cop got out and went up to the guy. The guy then pushed the cop to try to get away. The next thing I see is the guy wrestling the cop to the ground."   (Police Witness Statement, Decl. of John C. Caulfield, Ex. H.)  However, another witness, Edward Howard ("Howard"), testified that "the cop jumped out of the car, [Plaintiff] was on the bicycle.  They threw him down on the bicycle and arrested him." (Pls.' Opp'n Br., Ex. E. 17:6-10).  He testified that he did not hear Officer Wisniewski identify himself as a police officer when the officer approached Plaintiff.  Later in his testimony, Howard also states that the officer "started punching [Plaintiff]" when he was on the ground.  (Id. at 35:17-18).  Officer Wisniewski admits that he threw Plaintiff to the ground and used physical force to restrain him, but the parties dispute whether Plaintiff provoked this reaction by trying to flee or assault the officer.

     When Officer Wisniewski exited the vehicle and approached Plaintiff, Officer Santana had not yet parked the car.  By the time Officer Santana approached Officer Wisniewski and Plaintiff, about 30 seconds after Officer Wisniewski first approached Plaintiff, the two were already engaged in a struggle on the ground.  Officer Santana joined his partner in attempting to restrain and handcuff Plaintiff.  The officers and Plaintiff testified that while the officers were trying to restrain and handcuff Plaintiff, Plaintiff was struggling to get free, including kicking and trying to bite the officers.  Officer Santana testified that he heard Wisniewski say to Plaintiff "[s]top resisting, stop resisting, put your hands behind your back . . . stop it, cut it out, stop fighting, stop fighting." (Santana Dep., Decl. of John C. Caulfield, Ex. S. 37:2-5..)  The officers state that the physical force used to restrain Plaintiff included pushing Plaintiff down to the

4

ground using their arms and knees and hitting Plaintiff with their hands and feet. When Plaintiff would lift his head against the resistance of the officers, the officers would push it back down into the sidewalk pavement. After they handcuffed Plaintiff, the officers brought Plaintiff to his feet. The entire interaction appears to have lasted no longer than several minutes. As a result of the struggle between the officers and Plaintiff, Plaintiff suffered cuts and bruises on his face.

Plaintiffs commenced the instant action on November 13, 2003 alleging that the officers violated Plaintiff's constitutional rights by falsely arresting Plaintiff and using excessive force to effect the arrest. Plaintiffs also allege that Jersey City violated Plaintiff's rights by maintaining a policy or custom which resulted in Plaintiff's injures. Defendants presently move before this Court for summary judgment and request the Court to dismiss the Complaint.

## LEGAL DISCUSSION

**A.      Summary Judgment Standard**

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001). "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). When considering a motion for summary judgment, all evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party files a properly supported motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. Fed. R. Civ.

P. 56(e); Anderson, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252.

**B.     Liability of the Individual Defendants**

In the present case, Plaintiffs allege that Kilvio Vasquez was falsely arrested and that the defendant officers used excessive force in effecting his arrest, in violation of his constitutional rights under 42 U.S.C. § 1983. Defendants assert that Plaintiff's rights were not violated, and, even if they were, the defendant officers are entitled to qualified immunity because their actions were reasonable under the circumstances.

Qualified immunity is "immunity from suit rather than a mere defense to liability," and therefore, claims of immunity should be resolved at the earliest possible stage in the litigation. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Resolving qualified immunity questions is a two-step process. Saucier v. Katz, 533 U.S. 194, 200 (2001). This Court must first ask whether "the facts alleged, [when] viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002)(citing Saucier, 533 U.S. at ). If the facts alleged demonstrate a constitutional violation, the court must then determine whether the right asserted was "clearly established" at the time of the officer's unlawful conduct. Id. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. If material issues of fact exist that are relevant to the "objective reasonableness of the Defendants' conduct," summary judgment is not appropriate. Mantz v. Chain, 239 F. Supp.2d 486, 496 (D.N.J. 2002) (internal quotations

omitted).

    **1.    Excessive Force Claims**

Plaintiffs claim that Officers Wisniewski and Santana used excessive force during Plaintiff's arrest. Under the Fourth Amendment, force is not excessive if the amount of force used was objectively reasonable given the particular situation. Graham v.Connor, 490 U.S. 386, 394,397 (1989). "Reasonableness is judged on the totality of the circumstances, including the seriousness of the crime, the safety threat posed by the suspect, the suspect's attempts to resist arrest or to evade it by flight." James v. York County Police Dept., No. 05-2852, 2005 U.S. App. LEXIS 26876, *17-18 (3d Cir. Dec. 8, 2005) (citing Graham, 490 U.S. at 396). Additionally, the reasonableness is judged from the perspective of the officer on the scene, not with 20/20 hindsight. Graham, 490 U.S. at 396. Thus, "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, . . . the officer would be justified in using more force than in fact was needed." Saucier, 533 U.S. at 205.

In James, when a suspect threw a package down on the ground and moved to get away from the officers attempting to arrest him, the Court held that the officers' actions, which included hitting the suspect with the side of a van assumed to be moving at a slow speed, throwing him to the ground, and stepping on him in a rough manner, were objectively reasonable and that the force used was not excessive. 2005 U.S. App. LEXIS 26876, at *18-19. The Third Circuit held that in order to prevent escape, the officers were justified in using a "modest amount of force for a brief period of time." Id. The court also noted that even though plaintiff claimed he was injured, he was able to stand up immediately after the altercation. Id.

    *a.    Officer Wisniewski*

Officer Wisniewski does not dispute that he used physical force to restrain and arrest Plaintiff. However, Officer Wisniewski asserts that the use of force was justified based on his belief that Plaintiff was attempting to flee and the alleged attempt by Plaintiff to assault him, and further, that the amount of force he used was reasonable and appropriate under the circumstances. Additionally, he asserts that his belief in the legality of his actions was reasonable because his conduct was permitted by the Attorney General's use of force guidelines, and, as such, he is entitled to qualified immunity. The use of force guidelines set forth the appropriate parameters for the use of force by police officers. Specifically, the guidelines provide: "Physical force is employed when necessary to overcome a subject's physical resistance to the exertion of the law enforcement officer's authority, or to protect persons or property. . . . Examples include wrestling a resisting subject to the ground, using wrist locks, striking with the hands and feet, or other similar methods of hand-to-hand confrontation." (Attorney General's Use of Force Policy, June 2000, Decl of John C. Caulfield, Ex. T. Sections C(1) and (2).) If the facts were undisputed and as Officer Wisniewski and other witnesses state them to be – that Plaintiff attempted to escape, attempted to assault Officer Wisniewski and actively resisted arrest, that the interaction only took a couple of minutes, and that Plaintiff suffered only minor injuries – the Court agrees that, in line with Saucier and James, the amount of force used was reasonable and Officer Wisniewski would be entitled to qualified immunity. However, crucial facts relevant to whether *any* use of force was appropriate, namely whether Plaintiff was trying to flee from and/or assault a police officer who properly identified himself, are disputed.

For purposes of this motion, this Court must view the facts in the light most favorable to the nonmoving party, Plaintiff. In that light, Howard testified that Plaintiff was simply sitting on

his bike and that Officer Wisniewski jumped out of the car, threw Plaintiff on the ground, punched him and arrested him without identifying himself as a police officer and without provocation. Although Howard's testimony is not consistent with other witnesses or Plaintiff's own statements, it is not for this Court to weigh Howard's credibility, but rather to assess whether a reasonable jury, if they believed his testimony, could find that Officer Wisniewski's actions were unreasonable, and that Officer Wisniewski's asserted belief in the legality of his action was objectively unreasonable.

It is clearly established that the use of force greater than objectively reasonable violates the Fourth Amendment. Saucier, 533 U.S. at 201. If Howard's testimony is believed, this Court determines that a jury could reasonably find that Officer Wisniewski could not have reasonably believed that his conduct in these particular circumstances was lawful. If Officer Wisniewski did not identify himself as a police officer or Plaintiff did not attempt to flee or assault the officer, Officer Wisniewski's conduct would have been contrary to the Attorney General's guidelines. Additionally, no reasonable officer could have believed that the conduct alleged by Plaintiff; that is, walking up to a person on the street, throwing the person to the ground, and punching them, was lawful. Accordingly, this Court finds that material issues of fact exist relevant to the determination of whether Officer Wisniewski's conduct was objectively reasonable under the circumstances, and that at this stage, he is not entitled to qualified immunity.

### b.     *Officer Santana*

Plaintiffs, in their opposition brief, almost exclusively focus on Officer Wisniewski's conduct in making their excessive force claim. Officer Santana became involved in the altercation with Plaintiff after he saw his partner struggling with Plaintiff on the ground. This

9

Court must judge Officer Santana's conduct as he reasonably could have believed the facts to be, even if that belief was mistaken. Viewing the facts in a light most favorable to Plaintiff, the evidence at most shows that Officer Santana saw his partner in an altercation with Plaintiff and actively engaged in restraining Plaintiff through the use of physical force. No evidence has been presented that Officer Santana saw the interactions between Plaintiff and Officer Wisniewski when the officer approached Plaintiff or that Officer Santana was involved in throwing Plaintiff to the ground. This Court finds it reasonable for an assisting officer, who has no reason to know that his partner was acting unlawfully, to protect and assist his partner when he believes that the officer is in danger. Therefore, even when viewed in a light most favorable to Plaintiff, it is objectively reasonable under the particular circumstances of this case for Officer Santana to have believed that his assistance, including the use of physical force, was lawful. Accordingly, this Court holds that Officer Santana is entitled to qualified immunity on Plaintiff's excessive force claims.

### 2. False Arrest Claims

To maintain a claim for unlawful arrest under § 1983, a plaintiff must prove that he was arrested by a state actor without probable cause. Sharrar v. Felsing, 128 F.3d 810, 827 (3d Cir. 1997). Courts have long recognized the constitutional prohibition against arrests without probable cause. See, e.g., Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972). Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995); Schneider v. Simonini, 163 N.J. 336, 360-362 (2000) (illustrating the long line of state and federal cases that have defined the law of probable cause). Probable cause exists if at the time of the arrest "the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law

enforcement officer to believe that an offense has been or is being committed by the person to be arrested." Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000). See also Beck v. Ohio, 379 U.S. 89, 91 (1964). If no facts are in dispute, the existence of probable cause can be determined by the trial judge as a matter of law. See Crescent City Live Stock Landing & Slaughter House Co. v. Butchers' Union Slaughter House & Live Stock Landing Co., 120 U.S. 141 (1887); Bristow v. Clevenger, 80 F. Supp. 2d 421, 433-434 (M.D. Pa. 2000). Because this analysis is conducted within the context of a qualified immunity discussion, this Court need not examine whether Plaintiff in fact committed the offense for which he was arrested, but only whether Defendants' belief in the legality of arresting Plaintiff was reasonable. See Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995).

Here, Plaintiff was arrested on three charges: wandering to commit a CDS offense in violation of N.J. Stat. § 2C:33-2.1, resisting arrest in violation of N.J. Stat. § 2C:29-2, and assaulting a police officer in violation of N.J. Stat. § 2C:12-1(b)(5)(a). N.J. Stat. § 2C:33-2.1(b) states

> A person, whether on foot or in a motor vehicle, commits a disorderly persons offense if (1) he wanders, remains or prowls in a public place with the purpose of unlawfully obtaining or distributing a controlled dangerous substance or controlled substance analog; and (2) engages in conduct that, under the circumstances, manifests a purpose to obtain or distribute a controlled dangerous substance or controlled substance analog.

N.J. Stat. § 2C:29-2(a) states:

> (1) Except as provided in paragraph (3), a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest. (2) Except as provided in paragraph (3), a person is guilty of a crime of the fourth degree if he, by flight, purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest. (3) An offense under paragraph (1) or (2) of subsection a. is a crime of the

11

> third degree if the person: (a) Uses or threatens to use physical force or violence against the law enforcement officer or another; or (b) Uses any other means to create a substantial risk of causing physical injury to the public servant or another.
>
> It is not a defense to a prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest, provided he was acting under color of his official authority and provided the law enforcement officer announces his intention to arrest prior to the resistance.

N.J. Stat. § 2C:2C:12-1(b)(5)(a) states:

> Commits a simple assault as defined in subsection a. (1), (2) or (3) of this section upon:  (a) Any law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority or because of his status as a law enforcement officer .
> . . .

Plaintiffs' basic argument for both the excessive force claim and the false arrest claim is that Plaintiff was merely riding his bike in his neighborhood when Officer Wisniewski, who was in plain clothes and allegedly failed to identify himself as a police officer, jumped out of an unmarked car, threw Plaintiff to the ground, punched him, and then arrested him.  If Plaintiff's version of the events, supported by Howard's testimony, is believed by a jury, then this Court concludes that a reasonable jury could find that Officer Wisniewski lacked probable cause to believe that Plaintiff resisted arrest or assaulted a police officer, as these offenses are defined supra.  However, if the facts are as other witnesses testified them to be, that Officer Wisneiwski identified himself as a police officer, that Plaintiff attempted to flee and/or assault him, and that Officer Wisniewski kept telling Plaintiff to stop resisting, a reasonable jury could find that the he had probable cause to arrest Plaintiff on those charges.  Since this analysis necessarily relies on these disputed factual allegations, which are also relevant to whether Officer Wisniewski had probable cause to arrest Plaintiff, this Court finds that summary judgment in favor of Officer

12

Wisniewski on the false arrest claim is inappropriate at this time.

On the other hand, no such factual disputes exist with regard to the initial interaction between Plaintiff and the officers relevant to the charge of wandering to commit a CDS offense. Howard did not testify to seeing the first interaction between Plaintiff and the officers. All witnesses who provided related testimony, including Plaintiff himself, state that Plaintiff rode by the officers car and said "what do you want." The officers and witness Hall testified that they believed that this question meant what drugs do you want. Plaintiffs claim that these facts alone are insufficient to supply probable cause to arrest Plaintiff. Implicitly, Defendants appear to agree. In their Moving Brief, Defendants state that "[o]nce the plaintiff was stopped and attempted to flee, probable cause clearly developed and an arrest was appropriate." (Defs.' Br. Summ. J. at 21.) This statement implies to the Court that prior to Plaintiff's alleged attempt to flee from the officers, an arrest may not have been appropriate. Therefore, the facts related to the first interaction between Plaintiff and the officers, although undisputed in the record before the Court, do not change this Court's finding that summary judgment on the false arrest claim with respect to Officer Wisniewski is inappropriate for disposition at summary judgment.

Similarly, as with the excessive force claim, Officer Santana necessarily occupies a different legal position than Wisniewski. Officer Santana did not see the initial interaction between Officer Wisniewski and Plaintiff and the evidence shows that Officer Santana's conduct was in response to seeing his partner in a struggle with a person on the ground. The record does not suggest that Officer Santana had reason to believe that Officer Wisniewski had failed to identify himself as a police officer nor that it was unreasonable for him to assist his partner in effecting the ensuing arrest. Therefore, this Court finds that Officer Santana is entitled to

qualified immunity with respect to Plaintiff's false arrest claim.

**C.      Liability of Jersey City**

For a municipality to be held liable for damages under § 1983, a plaintiff must demonstrate that the municipality itself has a policy or custom that resulted in a violation of the plaintiff's constitutional rights; a municipality cannot be held liable under a theory of respondeat superior or vicarious liability. Monell v. Dep't of Soc. Servs.of N.Y., 436 U.S. 658, 690-91 (1978). A custom can be established by showing a course of conduct that is "permanent and well settled." Id. at 691. Once established, the plaintiff is required to show that the municipality's custom caused his injury. Berg v. Allegheny County, 219 F.3d 261, 276 (3d Cir. 2000) (citing Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997)).

In asserting that Jersey City is liable for Plaintiff's injuries, Plaintiffs state that Jersey City had a choice in how to train its officers, and that by choosing not to provide more training to officers on how to deal with mentally disabled people, Jersey City demonstrated a deliberate indifference to the rights of Plaintiff. A custom may be established by providing evidence that the municipality failed to adequately train its officers. Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001). A failure to train theory requires plaintiff to "show . . . knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the [municipal defendants] actions or inaction could be found to have communicated a message of approval." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998). To establish municipal liability, Plaintiffs must show not only that Officer Wisniewski violated Plaintiff's constitutional rights, but also that the municipality was either aware of a deficiency in training for dealing with mentally disabled individuals or that similar incidents have

occurred, and that the lack of better training was the cause of Plaintiff's injuries. Plaintiffs have supplied no evidence that the municipality had actual knowledge of a training deficiency, nor has Plaintiff supplied any evidence of similar incidents. Further, rather than provide specific evidence to establish causation, Plaintiffs merely engage in speculative questioning - "[i]f Wisniewski had been trained to recognize [Plaintiff] for what he was, would he have still run at him? Used his 'command voice' or grabbed hold of him before attempting further communication?" (Pl. Br. Opp. at 14.) This Court finds that Plaintiffs' conclusory and questioning assertions coupled only with evidence from this specific incident, and no others, is insufficient the liability of Jersey City on a failure to train theory. Accordingly, summary judgment in favor of Jersey City is granted. All claims against Jersey City are dismissed.

### D. Punitive Damages

#### 1. Jersey City

It is well-settled that punitive damages are not permitted against a municipality unless expressly authorized by statute. Newport v. Facts Concerts, 453 U.S. 247, 261 (1981). The Court has affirmed its holding in subsequent decisions, including the notation in Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 786 n.15 (2000), that "[a] better reading of Newport is that we were concerned with imposing punitive damages on taxpayers under any circumstances." See also Smith v. Wade, 461 U.S. 30, 35 n.5 (1983). Hence, Plaintiff's claims for punitive damages against Jersey City shall be dismissed.

#### 2. Individual Defendants

Punitive damages may be awarded against individuals under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

15

reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). In Savarese v. Agriss, the Third Circuit explained that "for a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous." 883 F.2d 1194, 1204 (3d Cir. 1989). If the conduct was "intentional or motivated by evil motive," punitive damages are also be allowed, but meeting this higher standard is not required. Id. at 1204. See also Brennan v. Norton, 350 F.3d 399, 428-29 (3d Cir. 2003).

Viewing the facts in a light most favorable to Plaintiff, a reasonable jury could conclude that if Officer Wisniewski approached Plaintiff, threw him to the ground, punched him, and arrested him without justification that the officer's conduct evinced a "reckless or callous indifference" to Plaintiff's rights. Accordingly, Defendants' motion with respect to punitive damages against Officer Wisniewski is hereby denied. Additionally, because this Court has previously determined that Officer Santana is entitled to qualified immunity for his actions, this Court grants Defendants' motion with respect to a punitive damages claim against Officer Santana.

## CONCLUSION

For the foregoing reasons, it is on this 30th day of March, 2006,

**ORDERED** that Defendants' summary judgment motion [Doc. # 21] is hereby GRANTED in part, and DENIED in part; and it is further

**ORDERED** that the parties shall contact my Deputy Clerk, Lissette Rodriguez, to schedule a trial date for this matter.

It is so ordered.[4]

                                              /s/ Jose L. Linares
DATED: March 30, 2006              UNITED STATES DISTRICT JUDGE

---

[4] In Defendants' Reply Brief, Defendants' counsel quotes verbatim this Court's language from sections of this Court's opinion in <u>Capodici v. City of Jersey City</u>, Civil Action No. 03-2306, without reference or citation. In addition, for any case cite in Defendants' Reply Brief not plagiarized from this Court, counsel provides no pinpoint cites. While this Court's opinion has not been affected by defense counsel's unprofessional submission, this Court shall use this opportunity to express its displeasure with counsel and to set forth its expectation that all future submissions from City of Jersey City attorneys will be properly cited.